AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

16 JUL 12 PM 12: 25

CLERK-LAS CRUCES

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

834 SOUTH CANAL STREET, CARLSBAD, NEW MEXICO (LOOKING GLASS GIFTS & NOVELTIES)

Case No. 16-516 MR

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference.

located in the _____ District of _____New Mexico_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 863 | Sale or Offer to Sale Drug Paraphernalia |

The application is based on these facts:

See Affidavit in Support of Warrant, hereby incorporated by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Joseph W. Gelinas, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: 7-12-16 @ 12:21 PM

_____
Judge's signature

City and state: Las Cruces, New Mexico

United States Magistrate Judge
Printed name and title

# ATTACHMENT A

# PROPERTY TO BE SEARCHED

834 SOUTH CANAL STREET, CARLSBAD, NEW MEXICO, also known as LOOKING GLASS (Subject Premises)

FRONT VIEW



REAR VIEW



## ATTACHMENT B

## ITEMS TO BE SEIZED

Evidence of violations of 21 U.S.C. § 863, including, but not limited to, the following;

A.  Drug paraphernalia, including equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, including:

   (1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

   (2) water pipes;

   (3) carburetion tubes and devices;

   (4) smoking and carburetion masks;

   (5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

   (6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

   (7) chamber pipes;

   (8) carburetor pipes;

   (9) air-driven pipes;

   (10) bongs;

   (11) ice pipes or chillers; or

   (12) wired cigarette papers;

B.  Packaging materials, including: scales, plastic baggies, and tape.

C.  Magazines, brochures, or other documents related to the sale or purchase of drug paraphernalia.

Page 1 of 2

D. United States bulk currency

E. Photographs and/or video recordings evidencing criminal activity or any co-conspirators.

F. Records indicating occupancy, residency, and/or ownership of the Subject Premises including, but not limited to utility and telephone bills, and canceled envelopes.

G. Documents, books, and papers reflecting names, addresses, and/or telephone numbers and lists pertaining to the sale of drug paraphernalia.

H. Books, records, receipts, notes, ledgers, invoices, bank records, diaries, purchase records, cash receipts, and disbursements journals, inventory records and other records relating to the acquisition or sale, repackaging, or distribution of drug paraphernalia.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 834 SOUTH CANAL STREET, CARLSBAD, NEW MEXICO (LOOKING GLASS GIFTS & NOVELTIES, LLC) | Case No. 16 - 516 MR <br><br> **UNDER SEAL** |

AFFIDAVIT IN SUPPORT OF WARRANT

I, Joseph W. Gelinas, being duly sworn, depose and state as follows:

Affiant's Background and Experience

1. I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Las Cruces Regional Office of the El Paso Field Division. As a DEA Special Agent, I am empowered by 21 U.S.C. § 878 to effect arrests, searches, and seizures for violations of the federal narcotics laws.

2. I have been a Special Agent of the DEA since December 2010, during which time I have specialized in investigations involving narcotics trafficking. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, distribution, and importation of drug paraphernalia.

3. I have participated in over 200 investigations involving violations of the Controlled Substances Act. These investigations have involved the distribution of marijuana, cocaine, "crack" cocaine, heroin, methamphetamine, MDMA (ecstasy), synthetic cannabinoids (spice), synthetic cathinones (bath salts), and pharmaceutical drugs.

4. These investigations have involved several types of violators who have varying roles and responsibilities within the criminal organization. Some of these investigations

Page **1** of **11**

involved independent drug traffickers who distribute user amounts of controlled substances. Other investigations involved large structured organizations engaged in transporting and distributing controlled substances across the international border and throughout the United States.

5. My experience as a DEA Special Agent includes, but is not limited to, conducting surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working with undercover agents and informants. I have received training in and have experience in the investigation of violations of the federal drug offenses, including the offenses listed below.

6. I have investigated numerous drug trafficking organizations and have participated in operations related to the court authorized interception of various types of communications. I am, and agents assisting in this investigation are, familiar with matters including, but not limited to, the means and methods used by persons, businesses, and drug trafficking organizations (DTOs), to purchase, transport, store, and distribute illegal drugs and drug paraphernalia and to hide profits generated from the sale of illegal drugs and drug paraphernalia.

7. As a DEA Special Agent, I have frequently encountered drug paraphernalia located with controlled substances or bearing residue of controlled substances. I also have been involved in the execution of search warrants in which drug paraphernalia was seized, including the execution of search warrants on businesses where drug paraphernalia is sold.

8. As a result of my training and experience as a DEA Special Agent, I am able to identify items that are designed for and primarily used for the consumption of controlled substances.

9. As a result of my training and experience as a DEA Special Agent, I am familiar with drug culture, including terms and phrases associated with the use and distribution of

controlled substances. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

10. Based upon my training and experience, and on my consultation with other law enforcement officers experienced in investigations regarding conspiracy to manufacture, distribute and possess with intent to distribute drug paraphernalia, I have learned the following:

  a. Individuals and businesses that sell drug paraphernalia are often involved in trafficking illegal drugs as well.

  b. Individuals and businesses that sell drug paraphernalia often conceal evidence of their drug paraphernalia trafficking activities in their businesses. Evidence also may be found in other areas to which a drug paraphernalia dealer has ready access, such as rented storage areas and safety deposit boxes. This evidence, which is discussed in detail in the following paragraphs, includes paraphernalia for weighing, packaging and distributing drugs, other contraband, records, documents, evidence of drug transactions, proceeds from drug paraphernalia sales, and valuables obtained from proceeds.

  c. Individuals and businesses involved in the sale of drug paraphernalia often maintain records of their transactions in a manner similar to the record keeping procedures of legitimate businesses. Even after the drug paraphernalia is sold, documentary records are often maintained for long periods of time, even years, to memorialize past transactions, the status of accounts receivable and accounts payable, and the names and telephone numbers of suppliers, customers and co-conspirators. These records may be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay/owe sheets, IOUs, miscellaneous notes, money orders, customer lists and telephone address books. These records can reflect names,

Page 3 of 11



addresses, and/or telephone numbers of associates and co-conspirators, the sale and purchase of drug paraphernalia, including precursors, customer lists, and amounts of money owed to the individual or business by customers and by the individual or business to suppliers.

      d.    Individuals and businesses involved in the sale of drug paraphernalia usually sell their product for cash. Because large quantities of drug paraphernalia can sell for thousands of dollars even at the wholesale level, dealers typically may have thousands of dollars of bulk cash on hand both as proceeds of sales and to purchase their own supplies. In addition, drug paraphernalia dealers and purveyors of drug paraphernalia often have other assets generated by their drug paraphernalia business, or purchased with cash earned, such as precious metals and stones, jewelry, real estate, vehicles, and other valuables.

      e.    Individuals and businesses involved in the sale of drug paraphernalia often try to legitimize these profits from the sale of drug paraphernalia. To accomplish these goals, individuals and businesses involved in the sale of drug paraphernalia utilize domestic banking institutions and their attendant services, real estate and businesses, both real and fictitious. They also try to secrete, transfer, and conceal the money by (1) placing assets in names other than their own to avoid detection while maintaining control, (2) laundering money through what appears to be a legitimate business or businesses, (3) hiding the money in their homes, safes and safety deposit boxes and/or (4) using the money to buy assets which are difficult to trace. This evidence is useful in a criminal prosecution, and it also is useful in identifying real and personal property that can be

seized and forfeited by the government under existing laws. Documentation concerning this type of activity can be stored on digital media and concealed virtually anywhere.

11.     Documents showing who owns, occupies or controls the location being searched also show who is responsible for the items found on the premises, including contraband and other evidence seized. Documents and items showing the identity of the persons owning, residing in or controlling the area being searched include, but are not limited to, utility and telephone bills, canceled envelopes and correspondence, outgoing answering machine messages, tax returns, keys, deeds and mortgage receipts.

## Sources of Information

12.     The facts and information contained in this affidavit are based upon my training and experience, participation in investigations, personal knowledge and observations during the course of this investigation, as well as the observations of other agents and officers involved in this investigation. All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of records, documents, and other physical evidence obtained during the course of this investigation. This affidavit contains information necessary to support probable cause. It is not intended to include each and every fact and matter observed by me or known to the United States.

## Applicable Criminal Statutes

13.     Pursuant to 21 U.S.C. § 863, it is unlawful for any person to sell or offer for sale drug paraphernalia, to use the mails or any other facility of interstate commerce to transport drug paraphernalia, or to import or export drug paraphernalia.

## Drug Paraphernalia

14. This investigation is targeting retail locations involved in the sale of drug paraphernalia. During the investigation, Undercover Agents have completed undercover purchases of drug paraphernalia.

15. The term "drug paraphernalia" is defined in 21 U.S.C. § 863(d).

The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter. It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, methamphetamine, or amphetamines into the human body, such as--

(1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(2) water pipes;

(3) carburetion tubes and devices;

(4) smoking and carburetion masks;

(5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

(7) chamber pipes;

(8) carburetor pipes;

(9) air-driven pipes;

(10) bongs;

(11) ice pipes or chillers; or

(12) wired cigarette papers.

16. 21 U.S.C. § 863(d) identifies two general categories of drug paraphernalia: (1) items "primarily intended ... for use" with controlled substances and (2) items "designed for use" with controlled substances. *See Posters 'N' Things, LTD. v. United States*, 511 U.S. 513, 518 (1994). The specific list of fifteen items set forth in the statute are drug paraphernalia by definition. 21 U.S.C. § 863(d); *see also Posters 'N' Things, LTD.*, 511 U.S. 519 (stating that the fifteen items listed in the statute constitute *per se* drug paraphernalia).

17. In *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 501 (1982), the Supreme Court determined that an item is "designed for use" with controlled substances "if it is principally used with illegal drugs by virtue of its objective features, *i.e.*, features designed by the manufacturer." *Id.* The Supreme Court reiterated this standard in *Posters 'N' Things, LTD.*, 511 U.S. 513 (1994) and held that the statutory definition established objective standards for determining what constitutes drug paraphernalia. *Id.* at 518. The Supreme Court specifically opined:

> The objective characteristics of some items establish that they are designed specifically for use with controlled substances. Such items, including bongs, cocaine freebase kits, and certain kinds of pipes, have no other use besides contrived ones (such as use of a bong as a flower vase). Items that meet the "designed for use" standard constitute drug paraphernalia irrespective of the knowledge or intent of one who sells or transports them.

*Posters 'N' Things, LTD.*, 511 U.S. at 518 (emphasis added).

18. In *Posters 'N' Things, LTD.*, the Supreme Court further clarified that "'primarily intended ... for use' refers to a product's likely use rather than to the defendant's state of mind." *Id.* at 519. In other words, the subjective intent of the purveyor of merchandise is irrelevant in determining whether the merchandise constitutes drug paraphernalia. *See id.* at 520.

19. In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the existence and scope of legitimate uses of the item in the

community and expert testimony concerning its use are among the factors that may be considered. *See* 21 U.S.C. § 863(e).

20.     21 U.S.C. 863(f) provides an exemption for items "traditionally intended for use with tobacco products." In *Posters 'N' Things, LTD.*, the Supreme Court clarified that the exemption for items "traditionally intended for use with tobacco products" is based on an objective standard and not the subjective intent of the purveyor. *Posters 'N' Things, LTD.*, 511 U.S. at 520-21. In other words, an item that constitutes drug paraphernalia is not exempted just because the purveyor of the item has the subjective intent of marketing the item for use with tobacco products or just because the purchaser has the subjective intent of using the item to consume tobacco products. *See id.* ("An item's 'traditional' use is not based on the subjective intent of a particular defendant.").

### Probable Cause

21.     On December 7, 2015, Task Force Officer (TFO) Aurora Hernandez, while acting in an undercover capacity, entered the Looking Glass Gifts & Novelties business, located at 834 South Canal Street, Carlsabad, New Mexico (NM). TFO Hernandez possessed audio and video recording devices and $100.00 (Official Advanced Funds). Once inside the business, TFO Hernandez conversed with a female employee. TFO Hernandez asked the female employee to recommend a pipe (smoking instrument) and the female employee made several suggestions. TFO Hernandez agreed to purchase a multi-colored glass pipe for $60.00. As TFO Hernandez purchased the pipe, TFO Hernandez asked the female employee for potpourri or anything similar. The female employee explained that they stopped selling it because it was illegal. Upon completion of the transaction, TFO Hernandez departed from the business.

22. The photograph below is a true and accurate depiction of the item purchased by TFO Hernandez from the Looking Glass Gifts & Novelties business, located at 834 South Canal Street, Carlsbad, New Mexico, on December 7, 2016. Based on my training and experience, I believe that the tan and red glass pipe depicted below is designed for and primarily used for smoking marijuana. This pipe is unsuitable for smoking tobacco.



23. On May 16, 2016, Pecos Valley Drug Task Force (PVDTF) Agent Luis Ortega, while acting in an undercover capacity, entered the Looking Glass Gifts & Novelties business, located at 834 South Canal Street, Carlsbad, New Mexico. Task Force Agent (TFA) Ortega possessed an audio recording device and $50.00 (Official Advances Funds). Once inside the business, TFA Ortega conversed with a male employee. After browsing the merchandise, TFA Ortega selected a multi-colored glass pipe and then asked the male employee for vape oils. The male employee provided TFA Ortega with a clear container of fluid and stated that it was his (male employee) favorite. TFA Ortega paid approximately $48.00 for the vape oil and the glass pipe, and then departed from the store.

24. The photograph below is a true and accurate depiction of the items purchased by TFA Ortega from the Looking Glass Gifts & Novelties business, located at 834 South Canal

Street, Carlsbad, New Mexico, on May 16, 2016. Based on my training and experience, I believe the multi-colored glass pipe (smoking instrument) is designed for and primarily used for smoking marijuana. This pipe is unsuitable for smoking tobacco.



25. The aforementioned transactions involving the Looking Glass Gifts & Novelties business were, at minimum, audio recorded. The costs of the purchased items were recorded and the physical items were processed as evidence.

## Conclusion

26. Based upon the above information, I respectfully submit that there is probable cause to believe that evidence of a crime, contraband, fruits of crime, or other items illegally possessed, and property designed for use, intended for use, or used in committing a crime, including the violation of 21 U.S.C. § 863, is found at the Looking Glass Gifts & Novelties business, located at 834 South Canal Street, Carlsbad, New Mexico.

_____
JOSEPH W. GELINAS
Drug Enforcement Administration Special Agent

Page **10** of **11**

SWORN AND SUBSCRIBED to before me on this 12th day of July, 2016

_Lourdes Martinez_

United States Magistrate Judge